IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GARY GROENEWEG,

    Plaintiff,

vs.

JELD-WEN, INC., *a Delaware corporation*

    Defendant.

Case No. 6:20-cv-01030-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff, Gary Groeneweg, brings this diversity action against defendant, JELD-WEN, Inc. ("JELD-WEN") for common law and statutory tort claims arising out of injuries he sustained in an accident while unloading a shipment of defendant's windows. Now before the Court is defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 8. For the reasons set forth below, defendant's Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff, Gary Groeneweg is an employee of Crete Carrier Corporation ("Crete"). In April 2018, Crete contracted with defendant, JELD-WEN, to deliver bundles of windows from Bend, Oregon to Professional Builder's Supply in North Carolina. Plaintiff was assigned to this shipment.

Before plaintiff arrived at defendant's facility on April 29, 2018, defendant's employees loaded a trailer with the bundles of windows sat on their ends. There were about 40 windows in each bundle. The employees secured each bundle using a single securement strap. The next day, plaintiff picked up the trailer from defendant's facility to transport it to North Carolina. At no point did plaintiff enter the trailer or alter the shipment.

As part of the delivery process, defendant requires drivers to assist in unloading shipments. While unloading the shipment at the receiving facility in North Carolina, plaintiff tried to hold a bundle of windows upright while releasing the securement strap. The bundle tilted and fell on him. Others came to his aid, but when they tried to pull the windows off, the bundle fell on plaintiff once again. Plaintiff suffered numerous injuries as a result of this incident.

Plaintiff filed an initial complaint on May 1, 2020 and an amended complaint on June 15, 2020 in Deschutes County Circuit Court for the State of Oregon. On June 26, 2020, defendant filed a Notice of Removal pursuant to 28 U.S.C. § 1441. This case was properly removed to the District Court for the District of Oregon.

## STANDARDS

Before this Court is the defendant's Motion to Dismiss for failure to state a claim. To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief," and "sufficient factual matter, accepted as true, to state a claim for relief plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The complaint need only give "notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). But the complaint may not stand if it rests upon "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings three claims based on common law negligence and negligence *per se*, the Oregon Safe Employment Act, and Oregon Employer Liability Law. Defendant now moves to dismiss all three claims pursuant to Fed. R. Civ. P. 12(b)(6). The Court shall address each claim in turn.

I.   *Common Law Negligence Claim*

Plaintiff first brings a common law negligence claim. Plaintiff alleges that defendant acted negligently by creating a situation in which his injuries were reasonably foreseeable. Defendant essentially argues that the First Amended Complaint ("FAC") does not sufficiently allege that it owed a duty to plaintiff.

In Oregon, for a successful common law negligence claim, a plaintiff need not prove that the defendant owed him a duty unless the parties had a "special relationship." *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987). Rather, a defendant is negligent if "their conduct unreasonably creat[ed] a foreseeable risk of harm to others." *JH Kelly, LLC v. Quality Plus Servs., Inc.*, 305 Or. App. 565, 572 (2020) (citing *Slogowski v. Lyness*, 324 Or. 436, 441 (1996)). In general, "everyone owes each other the duty to act reasonably in light of foreseeable risks of harm." *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015). So, as long as there was no special relationship between the two parties, and the plaintiff claims that the defendant created an unreasonable risk of foreseeable harm, then the duty-breach analysis for a negligence claim is fulfilled. *Id.*

Here, defendant argues that there was a special relationship between the two parties because the company and Crete were parties to a contract. However, "an arm's-length contractual relationship between parties does not transform that relationship into a 'special' one." *Abraham v. T. Henry Const., Inc.*, 230 Or. App. 564, 572, (2009). The test for whether the relationship between two contracting parties is a "special relationship" is a "functional, rather than formal, inquiry." *Id.* at 571. A "special relationship" arises between a contractor and a subcontractor's employee when the employee is hired to perform work "which fall[s] within a special expertise or knowledge." *Yowell v. Gen. Tire & Rubber Co.*, 260 Or. 319, 325 (1971). Thus, a defendant should not be held liable when

> (1) a risk is obvious and "inextricably intertwined with [the plaintiff's employer's] performance of a specialized task"; (2) the defendant lacks

expertise regarding and control over the specialized task and, consequently, the risk; and (3) the defendant hired the plaintiff's employer because of its expertise in that work.

*Spain v. Jones*, 257 Or. App. 777, 787–88 (2013). If all the requirements listed above are fulfilled, the contractor owes the subcontractor's employee no duty to discover or warn of any unknown dangerous conditions surrounding the specialized work; that duty is held by the employee's direct employer. *Id.*; *see also George v. Myers*, 169 Or. App. 472 (2000) (Defendant hired plaintiff for his expertise in framing, and when plaintiff fell from the frame, the court reasoned that because plaintiff was an expert in the field surrounding the injury causing event, the two parties were in a special relationship).

All of the above mentioned are not satisfied here. Rather, as alleged, defendant maintained control over the specialized task, namely the loading and unloading process. Plaintiff did not help load or secure the bundles, nor did he interfere with them in any way before trying to unload them. Defendant's employees alone performed the loading process. Defendant had both control over the securement method and could foresee how the unloading process would occur. Plaintiff also alleges that defendant had "control, or the right of control, of how [Crete's] drivers were to aid in the delivery of its doors and windows." FAC ¶ 6. Because the harm plaintiff sustained allegedly resulted from the placement and weight of the bundles that defendant's employees had loaded and secured, defendant had both control over the risk and the risk fell within its expertise. Accordingly, plaintiff and defendant were not in a special relationship. Therefore, plaintiff need not allege that defendant

owed him a duty for his common law negligence claim to survive defendant's Motion to Dismiss.

Even where there was no special relationship between the parties, plaintiff must adequately allege foreseeability to fulfill the duty-breach analysis of his negligence claim. Defendant argues that plaintiff's allegations about foreseeability are conclusory. However, plaintiff asserts that defendant should have foreseen the risk when its employees secured the bundles in a manner that could lead to the shipment falling. Because defendant crafted and secured the bundles, it was in the best position to know how they would be unsecured and the resulting harm if those bundles fell. Meaning, defendant could have foreseen the risk of harm if the bundles were improperly placed and secured. At this stage of the case, the Court finds that plaintiff has sufficiently alleged that the harm was foreseeable.

## II.     *Oregon Safe Employment Act and Negligence Per Se Claims*

Plaintiff alleges that defendant was negligent *per se* because it violated the Oregon Safe Employment Act ("OSEA"). Separately, he claims he is entitled to relief under the OSEA and the Oregon Administrative Rules ("OAR"). The particulars of plaintiff's negligence *per se* and OSEA claims are functionally identical, so analysis of both will be addressed in this section.

The OSEA, Or. Rev. Stat. §§ 654.001-654.295 and 654.750-654.780, requires employers and owners to maintain a safe work environment. The Act has three purposes: (1) ensuring safe and healthful working conditions, (2) preserving human resources, and (3) reducing the burden caused by occupational injury and disease. Or.

Rev. Stat. § 654.003. The Act applies to direct employers as well as, in some cases, owners of workplaces. *Flores v. Metro Mach. Rigging Inc.*, 99 Or. App. 636, 641 (1989); *Moe v. Beck*, 311 Or. 499, 503-505 (1991).

Defendant argues that plaintiff was not a member of a class protected by the OSEA because he was not defendant's direct employee. Defendant also argues that plaintiff's allegation that defendant was the owner of the trailer is conclusory. Although plaintiff was only an indirect employee of defendant, the Court finds that plaintiff sufficiently alleges that defendant was the owner of the trailer and thus he is a member of the class protected by the statute.

A.    *Or. Rev. Stat. §§ 654.105, 654.020(1), and 654.022*

Under the OSEA, an "owner" is "every person having ownership, *control or custody* of any place of employment or of the *construction*, repair or maintenance of any place of employment." Or. Rev. Stat. § 654.005(6). The owner of a premise is liable "if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391, 408 (1997). Along with claims under the OSEA, negligence *per se* claims are supported if the owner of a place of employment violated an applicable statute even if they had no direct involvement or control of the injury producing activity. *Id.* at 407; *see also Cain v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1271 (D. Or. 2011) (though a hospital was not the direct employer of the defendant, the OSEA regulations concerning "owners" applied when the plaintiff was injured on the defendant's roof).

At this stage, plaintiff sufficiently alleges that defendant was the owner of the trailer. The complaint refers to defendant as the owner of the trailer, and alleges that defendant controlled, had custody of, and constructed the trailer. Plaintiff claims that defendant (1) was the only party to manipulate the contents of the trailer before the plaintiff's injury; (2) controlled how the shipment inside the trailer was organized and secured, (3) had custody of the trailer during the time it was at their facility before the plaintiff picked it up to travel; and (4) constructed the way the shipment was placed and secured inside the trailer. Thus, the facts supporting the assertion that defendant was the owner of the trailer are not threadbare conclusions.

Because plaintiff alleges that defendant was the owner of the trailer, his claims resting on statutes that reference the duties of "owners" survive the present Motion to Dismiss. These statutes are Or. Rev. Stat. §§ 654.015 and 654.022. Additionally, one of plaintiff's claims cites Or. Rev. Stat. § 654.020(1), which does not reference "owners" specifically, but rather it states that "no person shall" perform a list of activities which would increase the level of danger at a place of employment. This is highly inclusive, and the motions is also denied with respect to this statute.

B.    *Or. Rev. Stat. § 654.010*

Plaintiff agrees with defendant that Or. Rev. Stat. § 654.010 applies only to employers. There is no responsibility placed upon owners in theis statute. Because plaintiff concedes that he was not the direct employee of defendant, and the statute does not hold owners accountable, this Court will not extend the statute to encompass

the situation before it. Accordingly, plaintiff is not a member of the class of persons protected by the statute. Plaintiff's claims relying on upon this statute are dismissed.

C.   *The Oregon Administrative Rules*

Many particulars for the first and second claims of the FAC allege that defendant violated sections of the OARs in addition to specific sections of the OSEA. The OARs do not support plaintiff's claim for relief. The OARs lay out responsibilities for direct employers, not owners. OAR 437-001-0760; see also *Miller v. Goodyear Tire & Rubber Co.*, 434 F. Supp. 3d 877, 885 (D. Or. 2020).

That said, even though the OARs do not support relief, that is not ground for wholesale dismissal of every claim that references both the OARs and the OSEA. In the Ninth Circuit "[a] 'complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of the claim, but is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, regardless of whether it asks for the proper relief.'" *United States v. Howell*, 318 F.2d 162, 168 (9th Cir. 1963) (quoting *Dotschay v. National Mu. Ins. Co.*, 246 F.2d 221, 223 (5th Cir., 1957)); *see also Maxwell v. McLane Pac., Inc.*, 2017 WL 8186758, 9 (C.D. Cal. Oct. 19, 2017) ("Plaintiff's citation to one inapplicable statute as the basis for his claim does not undermine the sufficiency of his claim."). Though there are many negligence *per se* and OSEA allegations that also reference the OARs, the allegations show ground for relief under a negligence theory and the OSEA.

/ / /

/ / /

### III.   *Oregon Employer Liability Law Claim*

Plaintiff's third claim rests on the Oregon Employer Liability Law ("OELL"). The OELL is designed to ensure that employers provide safe premises for their employees. *Steiner v. Beaver State Scaffolding Equip. Co.*, 97 Or. App. 453, 457–58 (1989). The statute permits a plaintiff to recover from indirect employers such as owners, contractors and subcontractors. Or. Rev. Stat. §§ 654.305, 654.310. To recover as an indirect employee the plaintiff must prove that they were an adopted or intermingled employee of the defendant. *Miller v. Georgia-Pac. Corp.*, 294 Or. 750, 754 (1983) (*en banc*). Plaintiff must also prove that they were in charge of or had responsibility for work involving risk or danger in either (1) a situation in which the defendant and plaintiff's direct employer were engaged in a "common enterprise," *or* (2) a situation in which the defendant retained the right to control, or actually controlled, the manner or method in which the risk producing activity was performed. *Id.* There is no meaningful dispute between the parties that the work involved risk or danger. Rather, defendant argues that it was not the owner of the trailer and therefore not plaintiff's indirect employer, that it was not engaged in a common enterprise with Crete, and that it had no right to control—and never actually controlled—the manner or method in which the risk producing activity was performed

As detailed above, plaintiff has sufficiently alleged that defendant was the "owner" of the trailer.[1] Defendant argues, however, that even if it were the "owner"

---

[1] The OELL uses the same definition of "owner" as the OSEA.

Page 10 – OPINION AND ORDER

of the place of employment, plaintiff was not an adopted or intermingled employee. An "adopted" employee is one who works on a project "of which defendant's operations are an integral part." *Thomas v. Foglio*, 225 Or. 540, 545 (1961). An indirect employee is "intermingled" when the "defendant's interlocking interests with the [plaintiff's] employer amount to an 'intermingling of duties and responsibilities.'" *Myers v. Staub*, 201 Or. 663, 668 (1954) (internal citations omitted).

Defendant states that it and Crete needed to have been in *simultaneous* work for plaintiff to be intermingled or adopted, and because defendant was not at the unloading dock, it and Crete were not engaged in simultaneous work. Defendant grounds this analysis in *Wilson v. PGE*[2] where the court stated that an indirect employment relationship arises when the defendant and a plaintiff's employer are simultaneously engaged in carrying out work for a common enterprise. 252 Or. 385, 391 (1968), *abrogated by Yeatts Whitman v. Polygon Nw. Co.*, 360 Or. 170 (2016). Though *Wilson* does provide that these cases commonly arise when the plaintiff and defendant's work are simultaneous, it immediately clarifies that

> *[w]hen as the result of the activities of defendant's employees or use of his equipment*, a risk of danger is created which contributes to an injury to plaintiff who is the employee of another engaged in work on the same project, defendant has been considered to have sufficient control over the work to be subject to the duties imposed by the Act. This is so even though he might not have had actual control over the specific activity in which plaintiff was engaged at the time of his injury.

---

[2] Defendant also cites *Flores* to support its argument. 99 Or. App. at 640. However, the section defendant cites does not relate to whether a plaintiff is an indirect employee. Rather, it relates to a defendant's control over the injury-causing instrumentality.

Page 11 – OPINION AND ORDER

*Wilson*, 252 Or. at 391. (citing *Thomas*, 225 Or. at 549) (emphasis added).

Here, plaintiff has alleged that defendant's employees improperly used the securement straps and improperly placed their shipment in the trailer. Because plaintiff's injuries resulted from equipment that defendant's employees placed and secured, plaintiff can be considered an adopted or intermingled employee.

The Court also finds that plaintiff's direct employer, Crete, and defendant were engaged in a common enterprise.

> "[T]he common enterprise test requires, first, that two employers […] participate in a project of which the defendant employer's operations are an 'integral' or 'component' part; second, the work must involve a risk or danger to the 'employees or public; third, the plaintiff must be an 'employee' of the defendant employer […]; and fourth, the defendant must have charge of or responsibility for the activity or instrumentality that causes the plaintiff's injury."

*Sacher v. Bohemia, Inc.*, 302 Or. 477, 486–87 (1987) (internal citations omitted).

On this theory, the disputes that remain between the parties are whether the project was one in which defendant's operations were an integral or component part, and whether it had charge over the activity or instrumentality that caused the injury.

The Court finds, based on the allegations in the complaint, that defendant's operations were an integral or component part of the project between it and Crete. Without defendant's products there would be no need for the company to contract with Crete to transport and unload the products. Crete was hired because defendant needed to transport goods to receive compensation for those goods by the receiving

party. Thus, the two companies were in a project of which defendant's operations were an integral part.

Whether defendant had charge of the activity or instrumentality that caused injury to plaintiff is difficult to answer. Defendant argues that it needed to have on-going control of the shipment when the injury occurred to be found in charge of the activity and instrumentality that caused injury to plaintiff. Defendant cites *Quackenbush v. Portland General Electric Company* where the plaintiff was hired to prune a tree and was electrocuted as he climbed down. 134 Or. App. 111, 113 (1995). The court in *Quackenbush* found that, though the defendant at one time had control over the injury causing instrumentality, the power lines, defendant had completed its work at the time of plaintiff's death. *Id.* at 115. Meaning, that the two parties were not in a common enterprise with the plaintiff's employer at the time of the plaintiff's death. *Id.* Defendant also cites *Steiner*, where the court denied the plaintiff's OELL claim, finding the defendant's lack of *ongoing* control of the injury causing instrumentality persuasive. 97 Or. App. at 458. These cases indicate the need for the defendant to exercise ongoing control of the instrumentality to be liable under the OELL. That said, OELL claims are also intended to be "liberally construed to cover situations in which the defendant did not have actual control over the specific activity that was the immediate cause of the plaintiff's injury." *Thomas*, 225 Or. at 546 (internal citations omitted).

Defendant was not physically present at the time of injury. However, even though defendant was absent, the company still had responsibility for or charge of

Page 13 – OPINION AND ORDER

the shipment during the unloading process. Because plaintiff did not touch the secured shipment until he tried to unload it, defendant's employees were the last party to have control of the shipment and its securement up until the moment plaintiff released the securement straps. Though there was a large temporal gap between the loading and unloading process, there were no intervening events that changed who had responsibility for, or charge of, the injury-causing instrumentality.

Even if this Court does not find that defendant and Crete were in a common enterprise, defendant may still be liable if it retained the right to control, or actually controlled, the manner or method the risk producing activity was performed. *Sacher*, 302 Or. at 483-485. This is more than the defendant simply defining the scope of the work. *Brown*, 150 Or. App. at 398 (telling the plaintiff where to paint did not amount to retained or actual control); *George*, 169 Or. App. at 477. (telling the plaintiff to move boards did not render the defendant in control of the method the plaintiff used to move the boards).

Here, defendant allegedly controlled the manner and method by which plaintiff unloaded the windows. The complaint alleges that defendant required plaintiff to "physically aid in the delivery of its doors and windows, including releasing any securement straps and sliding the items to the end of the trailer for unloading by the recipient." FAC ¶ 14-15. Plaintiff also alleges that defendant's employees secured the bundles with securement straps, and that they composed the bundles of approximately 40 windows. Defendant exceeded merely defining the scope of the work. Rather, it retained and actually controlled the manner and method of the work.

Because defendant's employees secured the bundles, its employees necessarily defined how the bundles would be unsecured.  Additionally, because defendant's employees composed the bundles of windows, they controlled how many windows plaintiff had to carry at any one time.  Thus, defendant did more than tell plaintiff to unload the trailer, it controlled the manner and method of unloading.

## CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss (doc. 8) is GRANTED IN PART and DENIED IN PART.  The Motion is denied as to plaintiff's common law negligence claims, the negligence *per se* claims and OSEA claims based on Or. Rev. Stat. §§ 654.015, 654.020, and 654.022, and OELL claims.  Defendant's motion is granted as to plaintiff's claims based on Or. Rev. Stat. § 654.010.  The request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  10th  day of December 2020.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge